UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 08-324-GWU

HUBERT P. REAVIS,                                                                    PLAINTIFF,

VS.                                        **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                                 DEFENDANT.

## INTRODUCTION

Hubert Reavis brought this action to obtain judicial review of an unfavorable administrative decision on his application for Supplemental Security Income (SSI). The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of

1

   Impairments). If so, disability is conclusively presumed and benefits are awarded.

4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.

5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

 Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

 One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician

08-324  Hubert P. Reavis

than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

08-324  Hubert P. Reavis

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to

08-324  Hubert P. Reavis

make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition,

08-324 Hubert P. Reavis

a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

      However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert

accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Reavis, a 48-year-old man with a "marginal" education, suffered from impairments related to obesity, avascular necrosis, low back pain secondary to degenerative disc disease, osteoarthritis, osteoporosis, chronic obstructive pulmonary disease secondary to tobacco abuse, and being status post left shoulder surgery. (Tr. 14-15, 20). While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that he retained the residual functional capacity to perform a restricted range of sedentary level work. (Tr. 17, 20). Since the available work was found to constitute a number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 20-21). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Tr. 21).

After review of the evidence presented, the undersigned concludes that the administrative decision is not supported by substantial evidence. The ALJ erred in evaluating Reavis's mental status. However, the current record also does not mandate an immediate award of SSI. Therefore, the court must grant the plaintiff's summary judgment motion in so far as it seeks a remand of the action for further consideration and deny that of the defendant.

Reavis previously filed an SSI application on May 26, 2005.  (Tr. 12).  This action was denied at all administrative levels with the final decision issued on July 28, 2006.  (Id.).  This decision was appealed to federal district court where the undersigned affirmed it on July 6, 2007.  See Reavis v. Astrue, London Civil Action No. 06-463-GWU (E.D. Ky.).  In the present action, the ALJ declined to reopen this prior denial decision and applied the doctrine of res judicata to the earlier time frame.  (Id.).

The court notes that principles of res judicata require that the administration be bound by the findings of a prior administrative decision unless a change of circumstances is proved upon a subsequent application.  Drummond v. Commissioner of Social Security, 126 F.3d 837, 842 (6th Cir. 1997).  The prior ALJ did not find that Reavis suffered from a "severe" mental impairment.  (Tr. 14-15).  However, the current ALJ found that "new and material" evidence supported such a finding.  (Tr. 15).

The mental factors found by the ALJ included a limitation to simple work instructions, an inability to sustain attention and concentration for periods exceeding two hours in an eight-hour day, a limitation to object-focused work environments in which contact was infrequent and casual and a limitation to non-public work environments requiring adaptation to only routine workplace changes.  (Tr. 17).  These mental limitations were presented to Vocational Expert Linda Taber, along

08-324  Hubert P. Reavis

with a number of physical restrictions.[1]  (Tr. 369-370).  In response, Taber identified a significant number of sedentary level jobs in the national economy which could still be performed.  (Tr. 370).  The ALJ relied upon this information to support the denial decision.

Reavis was examined by Psychologist Greg Lynch in February of 2007.  Lynch diagnosed a major depressive disorder and anti-social personality features.  (Tr. 154-155).  The plaintiff's Global Assessment of Functioning (GAF) was rated at 50.  (Tr. 155).  Such a GAF suggests the existence of "serious" psychological symptoms according to the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34.  The examiner indicated that the claimant would be "moderately" limited in his ability to perform simple, repetitive tasks, to tolerate stress and pressures, and to sustain attention and concentration toward simple repetitive tasks.  (Id.).  Lynch opined that Reavis would be "mildly to moderately" impaired in responding to supervision, co-workers, and work pressures in a work setting.  (Id.).  The defendant argues that these restrictions are consistent with the ALJ's findings.  However, Lynch indicates that performance of even simple tasks is "moderately" impaired, a finding not made by the ALJ.  Therefore, Lynch does not support the administrative decision.

---

[1]The physical restrictions were compatible with those found in the prior denial decision.

08-324 Hubert P. Reavis

In September of 2007, Psychologist Christopher Catt, assisted by his Licensed Psychological Associate Shannon Mahoney, examined Reavis. The plaintiff was diagnosed as suffering from a major depressive disorder, a personality disorder with anti-social traits and possible borderline intelligence. (Tr. 249). The claimant's GAF was rated at 41, suggesting the existence of "serious" psychological symptoms. (Tr. 250). Reavis was noted to suffer from "marked" limitations of ability to handle even simple repetitive tasks and to tolerate stress and pressure of day-to-day work activity. (Id.). An "extreme" impairment of ability to respond appropriately to supervision, co-workers and work pressures was noted. (Id.). Finally, the plaintiff was said to be "moderately" limited in sustaining attention and concentration for simple, repetitive tasks. (Id.). The ALJ rejected this opinion. (Tr. 20). The undersigned notes that it certainly does not support the administrative decision.

In March of 2008, Psychologist Melissa Couch examined Reavis and diagnosed a bipolar disorder, a pain disorder, a reading disorder and borderline intelligence. (Tr. 332). The plaintiff's GAF was rated at 45, suggesting the existence of "serious" psychological symptoms. (Tr. 334). Couch also identified a number of very severe mental limitations including a "seriously limited but not precluded" ability to remember work-like procedures, carry out short and simple instructions, maintain attention and concentration for two-hour segments, maintain socially appropriate behavior, and adhere to basic cleanliness standards. (Tr. 336-

10

338).  He was said to be unable to meet most competitive standards in maintaining regular attendance and being punctual within customary tolerances, sustaining ordinary routine without special supervision, working in coordination or proximity to others, making simple work-related decisions, accepting instructions or responding to criticism from supervisors, responding appropriately to routine work changes, and dealing with normal work stresses.  (Tr. 336-337).  The ALJ also rejected this opinion. (Tr. 20).  However, it certainly does not support the administrative decision.

Reavis sought treatment for his mental problems at the Kentucky River Comprehensive Care Center (Tr. 224-243, 326-328, 339-341).  Specific mental restrictions were not assessed.  However, the plaintiff's GAF was rated at 45, suggesting the existence of "serious" psychological symptoms. (Tr. 241).  Thus, the treating source also does not provide support for the administrative decision.

Psychologists Laura Cutler (Tr. 171-174) and Jan Jacobson (Tr. 251-254), the non-examining medical reviewers, each opined that Reavis would be "moderately" limited in handling detailed instructions, maintaining attention and concentration, and responding appropriately to changes in the work setting.  The ALJ's findings were compatible with these opinions.  An ALJ may rely upon the opinion of a non-examiner over that of an examining source when the non-examiner clearly states the reasons for their differing opinions.  <u>Barker v. Shalala</u>, 40 F.3d 789, 794 (6th Cir. 1994).  Neither Cutler nor Jacobson had the opportunity to see

08-324  Hubert P. Reavis

and comment upon the opinion of Couch who examined the plaintiff in January of 2008, well after the February, 2007 and October, 2007 dates the reviewers saw the record.  Thus, these opinions were insufficient to support the administrative decision.  The ALJ should at least have sought the advice of a medical advisor who had seen and commented upon the entire record.  Therefore, a remand of the action for further consideration is required.

The undersigned concludes that the administrative decision must be reversed and the action remanded to the Commissioner for further consideration. Therefore, the court must grant the plaintiff's summary judgment motion to this limited extent and deny that of the defendant.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 31st day of July, 2009.

Signed By:

G. Wix Unthank

United States Senior Judge